# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>CHRISTOPHER DEAN NG and<br>SHEILA NG,<br><br>     Debtors. | Case No. 10-02001<br>Chapter 7<br><br>Related Docket No.: 32 |

## MEMORANDUM OF DECISION ON U.S. TRUSTEE'S MOTION TO DISMISS FOR ABUSE

This motion requires me to determine whether this chapter 7 case is abusive, based either on the presumption of abuse under section 707(b)(2)(A) or on the totality of the circumstances under section 707(b)(3). The result turns upon whether, in calculating their ability to repay their debts, the debtors may deduct from their income the mortgage payments on a property they intend to surrender, retirement plan contributions and loan repayments, and payments on delinquent taxes.

Christopher Dean Ng and Sheila Ng filed a chapter 7 bankruptcy petition on June 30, 2010. At the time of the filing, Mr. and Mrs. Ng lived in a rented home on the island of Hawaii. They also owned a parcel of property in Aiea, on the island of Oahu (the "Property"). The Property, valued on Mr. and Mrs. Ng's Schedule A at $367,000, is subject to a mortgage for $464,602.18 and a statutory

lien in favor of a homeowners association for $4,070.52. Mr. and Mrs. Ng included the mortgage payments on the Property in their means test calculation on form B22A, along with contributions to Mr. Ng's retirement and repayment of a loan from Mr. Ng's pension plan. Mr. and Mrs. Ng also indicated on their Individual Debtor's Statement of Intention that they intend to surrender the Property.

This Court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a), (b), 157(a), (b)(1) (2006); 11 U.S.C. § 151. This is a core proceeding in bankruptcy. 28 U.S.C. § 157(b)(2)(A), (B).

A court may dismiss a chapter 7 case filed by an individual with primarily consumer debts if it finds that granting relief to the debtor would constitute an "abuse." 11 U.S.C. § 707(b)(1). The U.S. Trustee contends that a presumption of abuse arises under section 707(b)(2)(A) because Mr. and Mrs. Ng included in their means test calculation mortgage payments for the Property they intended to surrender. In the alternative, the U.S. Trustee contends the case should be dismissed because the totality of the circumstances regarding Mr. and Mrs. Ng's financial situation demonstrates abuse under section 707(b)(3)(B).

**A. Presumption of Abuse**

The presumption of abuse in section 707(b)(2) is based on a complex

2

financial means test designed to measure the debtor's financial condition at the time of filing and to determine whether the debtor is in need of bankruptcy relief. Section 707(b)(2)(A) requires the court to presume the debtor's filing is abusive if:

> [T]he debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) [of this section], and multiplied by 60 is not less than the lesser of -
>
>> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater, or
>>
>> (II) $10,950.

11 U.S.C. § 707(b)(2)(A). For purposes of the means test, debtors may deduct from their current monthly income certain payments on secured debts:

> The debtor's average monthly payment on account of secured debts shall be calculated as the sum of . . . the total of all amounts *scheduled as contractually due* to secured creditors in each month of the 60 months following the date of the petition . . . divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii) (emphasis added).

Most courts interpret the phrase "scheduled as contractually due" to mean "those payments that the debtor will be required to make on certain dates in the future under the contract." In re Rudler, 388 B.R. 433 (B.A.P. 1st Cir. 2008), aff'd, 576 F.3d 37 (1st Cir. 2009) (quoting In re Walker, 2006 WL 1314125, at *3 (Bankr. N.D. Ga. 2006)). Under this interpretation, it does not matter whether the debtors intend to surrender the collateral rather than pay the secured debt. "[T]he

3

filing of a petition for relief under the Bankruptcy Code does not relieve debtors of their contractual liability on the secured debt, regardless of their intention to surrender the collateral securing the debt." In re Makres, 380 B.R. 30, 33-34 (Bankr. N.D. Okla. 2007); see also In re Haar, 360 B.R. 759, 764 (Bankr. N.D. Ohio 2007); In re Randle, 358 B.R. 360, 365 (Bankr. N.D. Ill. 2006), aff'd, 2007 WL 2668727 (N.D. Ill. Jul. 20, 2007).

> [The statute] does not say that the debtor can deduct this amount only if she intends to keep the collateral post petition. It does not say that the debtor can deduct this amount only if she intends to continue making payments due post-petition. And it does not refer to the debtor's Statement of Intention with respect to the collateral. The provision requires the court to consider only the amounts due under the contract itself.

In re Randle, 358 B.R. at 362-63.

The U.S. Trustee contends that section 707(b)(2)(A) is a forward-looking assessment that cannot include payments the debtor will never make. The U.S. Trustee relies on In re Smith, 418 B.R. 359 (B.A.P. 9th Cir. 2009), a chapter 13 case. The court held that the debtor, who intended to surrender a car and two homes, could not deduct those payments when calculating "disposable income" available for payment of unsecured claims under section 1325(b) of the Bankruptcy Code.

Neither section 707(b)(2) nor section 1325(b)(2) and (3) is a model of

4

clarity. It is clear, however, that the two sections are not identical. The differences mean that cases interpreting section 1325(b) cannot be applied to section 707(b) without careful thought.

The first crucial difference is that section 1325(b) speaks of the debtor's "<u>projected</u> disposable income," while section 707(b) does not. The word "projected" means that the court may consider at least some future events. <u>Hamilton v. Lanning</u>, 130 S. Ct. 2464, 2478 (2010). The phrase "scheduled as contractually due" in section 707(b) does not suggest that the court should consider future events (other than any that affect the debtor's contractual obligations).

The second crucial difference is that, as the <u>Smith</u> court noted, sections 1325(b)(2) and (3) require the court to follow two steps in determining the necessity and amount of expenses. The first step requires the court to determine the *necessity* of expenses for a chapter 13 plan. The court must decide what expenses the debtor must pay during the plan term, <u>i.e.</u>, in the future. <u>In re Smith</u>, 418 B.R. at 369. The second step, which incorporates the means test, uses a static, backwards-looking approach to determine the *amount* of the expenditures. <u>Id.</u> Section 707(b) does not include the first step. It never asks whether the contractual payments on a secured debt are necessary.

5

The U.S. Trustee also relies on In re Skaggs, 349 B.R. 594 (Bankr. E.D. Mo. 2006), which is not binding on this court. That court held that a chapter 7 debtor is not entitled to deduct a payment on a secured debt on property which the debtor intends to surrender. Id. at 600. The court reasoned that, when defining "scheduled as" under section 707(b), the court should look to other sections of the Bankruptcy Code which use the same phrase. Id. Looking exclusively to section 1111(a) for guidance, the court concluded that the phrase "scheduled as" refers to the debtor's bankruptcy schedules and statements. Id.

I and most other courts disagree with Skaggs' interpretation. In re Nockerts, 357 B.R. 497 (Bankr. E.D. Wis. 2006); In re Makres, 380 B.R. at 30; In re Rudler, 388 B.R. at 437-38. Skaggs is incorrect for three reasons.

First, when Congress intended to reference the bankruptcy schedules, it did so either specifically or by reference to section 521. See, e.g., 11 U.S.C. §§ 523(a)(3), 524(k)(3)(H)(ii), 1326(a)(1)(B). Section 707(b) contains no such reference.

Second, section 1111(a) does not support the Skaggs interpretation. The section provides: "A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that *appears in the schedules filed* under section [521(a)(1)] or 1106(a)(2) of this title, except a claim or interest that is

U.S. Bankruptcy Court - Hawaii    #10-02001    Dkt # 41    Filed  02/09/11    Page 6 of 12

*scheduled as* disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a) (emphasis added). The phrase "scheduled as" in section 1111(a) refers to the previous phrase in the sentence, "appears in the schedules." See In re Galyon, 366 B.R. 164, 165 (Bankr. W.D. Okla. 2007). Section 707(b) has no such internal referent. Therefore, section 1111(a) does not lend meaning to the phrase "scheduled as" in section 707(b).

Third, reading the phrase "scheduled as" as a reference to the bankruptcy schedules leads to an absurd result. The schedules do not require the debtor to list "all amounts contractually due to secured creditors in each month of the 60 months following the date of the petition." See In re Smith, 388 B.R. at 438 (citing In re Randle, 358 B.R. at 365).

Therefore, I respectfully disagree with Skaggs that "scheduled as" under section 707(b)(2)(A)(iii) refers to the bankruptcy schedules.

I conclude that, when calculating monthly income under the means test, Mr. and Mrs. Ng are permitted to deduct their mortgage payments notwithstanding their intentions to surrender the Property. In re Rudler, 576 F.3d at 49; see also In re Norwood-Hill, 403 B.R. at 910; In re Hayes, 376 B.R. 55, 63 (Bankr. D. Mass. 2007); In re Sorrell, 359 B.R. 167, 186 (Bankr. S.D. Ohio 2007); In re Chang, 2007 WL 3034679, at *3 (Bankr. N.D. Cal. Oct. 16, 2007). Therefore, the

U.S. Bankruptcy Court - Hawaii   #10-02001   Dkt # 41   Filed  02/09/11   Page 7 of 12

presumption of abuse under section 707(b)(2)(A) does not arise in this case.

**B. Totality of the Circumstances**

If a presumption of abuse either does not arise or is rebutted, the court shall consider the totality of the circumstances surrounding the debtor's financial situation. 11 U.S.C. § 707(b)(3)(b). [1] This requires a case-by-case analysis of a debtor's financial situation and course of conduct. In re Baeza, 398 B.R. 692, 694-95 (Bankr. E.D. Cal. 2008). The burden of demonstrating abuse falls upon the moving party. Hebbring v. U.S. Trustee, 463 F.3d 902, 906 (9th Cir. 2006); see also In re Ansar, 383 B.R. 344, 348 (Bankr. D. Minn. 2008); In re Close, 384 B.R. 856, 860 (Bankr. D. Kan. 2008); In re Perrotta, 378 B.R. 434, 437 (Bankr. D. N.H. 2007). Several nonexclusive factors are relevant:

> (1) whether a debtor had likelihood of sufficient future income to fund a chapter 11, 12, or 13 plan which would pay a substantial portion of unsecured claims;
>
> (2) whether a debtor's petition was filed as a consequence of illness, disability, unemployment or some calamity;
>
> (3) whether the schedules suggest the debtor obtained cash advances and consumer goods on credit exceeding his or her ability to repay them;
>
> (4) whether a debtor's proposed family budget was excessive or

---

[1] Section 707(b)(3)(A) is not applicable because the U.S. Trustee does not claim that Mr. and Mrs. Ng filed a bad faith petition.

8

extravagant;

(5) whether a debtor's statement of income and expenses misrepresented the debtor's true financial condition; and

(6) whether the debtor engaged in eve-of-bankruptcy purchases.

In re Price, 353 F.3d 1135, 1139-40 (9th Cir. 2004). In the Ninth Circuit, the principal factor in this inquiry is the debtor's ability to repay debts. Zolg v. Kelly (In re Kelly), 841 F.2d 908, 914 (9th Cir. 1988) ("[T]he unanimous conclusion of bankruptcy courts has been that the principal factor to be considered in determining substantial abuse is the debtor's ability to repay the debts for which a discharge is sought."); see also In re Lamug, 403 B.R. 47, 57 (Bankr. N.D. Cal. 2009). Although Zolg and Price were decided prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), pre-BAPCPA decisions still provide guidance in evaluating motions to dismiss under section 707(b)(3). In re Oot, 368 B.R. 662, 666 (Bankr. N.D .Ohio 2007) ("It is a closely related fundament of statutory construction that, where Congress codifies prior case law, those prior holdings remain not only good law, but should serve as a valuable touchstone for interpreting the statute.") (citing CoStar Group Inc. v. LoopNet, Inc., 373 F.3d 544, 553 (4th Cir. 2004)); In re Davis, 378 B.R. 539, 547 (Bankr. N.D. Ohio 2007).

The U.S. Trustee contends that the totality of the circumstances warrants dismissal under section 707(b)(3)(B) because Mr. and Mrs. Ng have the ability to pay their debts out of future earnings if certain claimed expenses are deleted.[2] Specifically, U.S. Trustee challenges a retirement loan repayment, voluntary contributions to retirement, and payment for pre-petition tax debts.

Bankruptcy courts have discretion to determine whether retirement contributions are a reasonably necessary expense for a particular debtor, based on the specific facts of each individual case. Hebbring, 463 F.3d at 906.[3] In making this determination, the courts may utilize a non-exclusive list of factors, including:

> [T]he debtor's age, income, overall budget, expected date of retirement, existing retirement savings, and amount of contributions; the likelihood that stopping contributions will jeopardize the debtor's fresh start by forcing the debtor to make up lost contributions after emerging from bankruptcy; and the needs of the debtor's dependents.

In re Craig, 579 F.3d 1040, 1047-48 (9th Cir. 2009).

Retirement loan repayments have the same economic effect on both debtors

---

[2]The U.S. Trustee claims that the debtors underreported their income. At the hearing, counsel for the U.S. Trustee acknowledged that the difference between the amount which the debtors reported and the U.S. Trustee calculated is de minimus (about $89 per month).

[3] In Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045 (9th Cir. 2009), the court held that, for the purposes determining a presumption of abuse under section 707(b)(2), a debtor's voluntary contribution to a retirement plan is *per se* not a necessary expense. The court specifically noted that Hebbring did not apply because totality of the circumstances test under section 707(b)(3)(B) is separate and distinct from a presumption of abuse under section 707(b)(2). Id. at 1052; see also In re Craig, 579 F.3d 1040, 1046 n.5 (9th Cir. 2009). Thus, Hebbring still controls when analyzing the totality of the circumstances.

10

and creditors as voluntary pension contributions. In both cases, the amount available to creditors is diminished so the debtor can accumulate savings. Therefore, the retirement contributions and loan payments should be subject to the same standard.

There is not enough evidence for me to determine whether the Craig factors are met. The only evidence offered by the U.S. Trustee, which bears the initial burden, is Mr and Mrs. Ng's testimony that they do not anticipate retiring for about twenty one years, and Mr. Ng is already receiving some retirement income from another source. Although the debtors do not bear the burden of proof, Mr and Mrs. Ng have not provided any evidence that these contributions are reasonable and necessary for their family's maintenance and support.

Standing alone, the proposed repayment of non-dischargeable pre-petition tax debt is probably not abusive under section 707(b)(3)(B). The debtors would have to pay priority tax debts in full in a hypothetical chapter 13 case, 11 U.S.C. § 1322(a)(2), and the amount which the debtors have budgeted is only slightly higher than the amount they would have to pay under a chapter 13 plan. But a determination of abuse must rest on the totality of the circumstances, so one cannot evaluate any single fact in isolation.

Although the record is thin, the debtors' proposed retirement plan

11

contributions and pension loan repayments are troubling. The parties should have an opportunity to provide additional information about whether this case is abusive. The court will conduct a scheduling and status conference on February 23, 2011, at 9:30 a.m., to discuss what steps should be taken next.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 02/09/2011