OFFICE OF THE UNITED STATES TRUSTEE

TIFFANY L. CARROLL
Acting United States Trustee
CURTIS CHING 3931
Assistant United States Trustee
TERRI H. DIDION (CSB 133491)
Trial Attorney
1132 Bishop Street, Suite 602
Honolulu, Hawaii 96813
Telephone: (808) 522-8150
Fax: (808) 522-8156
ustpregion15.hi.ecf@usdoj.gov

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re: | CASE NO. 10-02001 |
| | (Chapter 7) |
| CHRISTOPHER DEAN NG and | |
| SHEILA MARIE NG, | Date: November 16, 2011 |
| | Time: 9:30 a.m. |
| Debtors. | Judge: Hon. Lloyd King |

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE:
U.S. TRUSTEE'S MOTION TO DISMISS
CHAPTER 7 CASE PURSUANT TO 11 U.S.C. §707(b)(1)
AND §707(b)(3)(B)

This matter came on for hearing on November 16, 2011, on the United

States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. §§707(b)(1) and

707(b)(3)(B) before the Honorable Lloyd King, United States Bankruptcy Judge.

Appearing for the United States Trustee was Terri H. Didion, Esq. Appearing for Debtors were Jean Christensen, Esq. and Robert K. Kekuna, Esq. Pursuant to Rule 7052 of the Federal rules of Bankruptcy Procedure, the Court makes the following findings and conclusions:

## FINDINGS OF FACT

1. Debtors, Christopher Dean Ng and Shelia Marie Ng, filed a Chapter 7 bankruptcy petition, schedules, statement of financial affairs, Form 22A and related documents on June 30, 2010.

2. Debtors' Schedule D listed secured claims in the amount of $484,830.70, of which $112,480.70 is reflected as unsecured. A priority tax claim in the amount of $10,213.11 is provided on Schedule E. Schedule F listed general unsecured claims in the amount of $38,261. Unsecured claims are comprised of three charge/revolving accounts and three student loans.

3. The primary purpose of filing the bankruptcy petition was to surrender real property located at 98-711 Iho Place, #3-604, Aiea, Hawaii, and thereafter discharge the mortgage secured by the property in the amount of $464,602.18.

4. At the time of filing, Schedule I indicated that Debtors' gross monthly income from all sources was $5,301.09. Monthly income included income from an existing military retirement account in the amount of $1,439.88. Payroll deductions also reflected a voluntary contribution into a second retirement account

-2-

U.S. Bankruptcy Court - Hawaii #10-02001 Dkt # 65 Filed 11/28/11 Page 2 of 12

in the amount of $520.74, as well as a retirement loan repayment of $343.42 per month. No rental income was reported on Schedule I.

5. Mr. Ng represented to the U.S. Trustee upon written inquiry that he would not be retiring from his current job for another 20 years.

6. At the time of filing, Schedule J indicated that monthly expenses totaled $5,225.00 resulting in a monthly surplus of $76.09.

7. On October 22, 2010, the U.S. Trustee timely filed its Statement of Presumed Abuse pursuant to 11 U.S.C. §704(b)(1)(A).

8. On November 22, 2010, the U.S. Trustee timely filed its Motion to Dismiss Case for Abuse under 11 U.S.C. §§707(b)(1), 707(b)(2) and (b)(3)(B).

9. On January 5, 2011, Debtors filed their opposition to U.S. Trustee's Motion to Dismiss Case for Abuse.

10. An initial hearing on the U.S. Trustee's Motion to Dismiss Case for Abuse was held on January 19, 2011, and the matter was taken under submission.

11. On February 9, 2011, a Memorandum of Decision on U.S. Trustee's Motion to Dismiss Case for Abuse was entered. The Court denied the U.S. Trustee's motion under 11 U.S.C. §707(b)(2), however, it did not rule on dismissal of the case under 11 U.S.C. §707(b)(3)(B). Instead, the Court continued the hearing to allow both parties to submit additional information on whether this case was abusive.

12. On June 9, 2011, Debtors relocated from the Big Island to Maui by Mr. Ng's employer, General Electric International (hereinafter referred to as GE).

13. In a July 17, 2011 declaration submitted to the U.S. Trustee, Mr. Ng stated that he had terminated his retirement contributions of $520. In addition, Mr. Ng declared that the pre-petition loan taken against his GE pension for which he had been paying $343 per month had been repaid in full.

14. The Court issued a minute order on September 23, 2011, and set November 16, 2011, as the hearing date on the remaining issue of dismissal pursuant to 11 U.S.C. §707(b)(3)(B).

15. Mr. Ng's pay advice from GE for the period ending September 18, 2011 showed year to date earnings totaling $99,508.10, which amounts to $11,347.40 per month[1]. After adding Mr. Ng's $1,391.08 pension income, the Debtors' adjusted gross income from all sources totaled $12,738.48 per month.

16. On October 3, 2011, Debtors filed an Amended Schedule I and J showing Debtors' current income and expenses. Debtors' reported Mr. Ng's GE gross income as $8,804.77 per month. After adding Mr. Ng's $1,391.08 pension income, the Debtors claimed their monthly gross income from all sources was

---

[1] The September 18, 2011 pay period covered 38 weeks. The United States Trustee divided the gross amount ($99,508.10) by 38 and then multiplied by 52 (for an annualized amount) then divided by 12 (for the months in a year) to arrive at the gross monthly income ($11,347.40).

-4-

U.S. Bankruptcy Court - Hawaii #10-02001 Dkt # 65 Filed 11/28/11 Page 4 of 12

$10,195.85. No rental income was reported on Amended Schedule I.

17. Based on Mr. Ng's actual 2011 gross wages through September 18, 2011 plus his pension income, the Debtors' Amended Schedule I understated their gross income by over $2,500 per month.

18. Moreover, notwithstanding Mr. Ng's July 17, 2011 declaration that his retirement contributions and pension loan repayments had stopped, the Amended Schedule I showed new "Pension" deductions of $264.16 per month and new deductions for "401k Loans" of $289.68 per month.

19. With Amended Schedule I understating the Ngs' actual gross income by over $2,500 per month, and Amended Schedule J showing increased monthly expenses including $400 per month for back taxes, the Debtors concluded that their current monthly net income was $165.32.

20. On the eve of the continued hearing, November 15, 2011, the Ngs' late-filed a new declaration by Mr. Ng which provided an updated pay advice from GE for the period ending November 13, 2011. The pay advice shows year to date earnings totaling $115,079.09. This comes to $10,840.78 per month.[2] After adding Mr. Ng's $1,391.08 pension income, Debtors' adjusted monthly gross

---

[2] The November 15, 2011 pay period covered 46 weeks. The United States Trustee divided the gross amount ($115,079.09) by 46 and then multiplied by 52 (for an annualized amount) then divided by 12 (for the months in a year) to arrive at the gross monthly income ($10,840.78).

U.S. Bankruptcy Court - Hawaii #10-02001 Dkt # 65 Filed 11/28/11 Page 5 of 12

income from all sources comes to $12,231.63.

## CONCLUSIONS OF LAW

21. This Court has jurisdiction of this matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1) and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(A) and (B).

22. The U.S. Trustee's motion to dismiss for abuse is filed pursuant to 11 U.S.C. § 707(b)(1); (b)(2)[3] and (b)(3)(B).

23. The Court may dismiss a chapter 7 case as abusive if a debtor filed the petition in bad faith or if the totality of circumstances of a debtor's financial situation demonstrates abuse. Section 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (2)(A)(i) does not arise or is rebutted, the court shall consider
>     (A) whether the debtor filed the petition in bad faith; or
>     (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

24. The Court applies In re Price, 353 F.3d, 1135, 1139 (9th Cir. 2004), which held that the totality of circumstances required consideration of several factors. Those factors include:

    1)    whether a debtor had the likelihood of sufficient future income to

---

[3] As noted above, the United States Trustee's motion to dismiss was previously denied with respect to §707(b)(2). Therefore, these Findings of Fact and Conclusions of Law analyze the United States Trustee's motion with respect to §707(b)(3)(B).

U.S. Bankruptcy Court - Hawaii #10-02001 Dkt # 65 Filed 11/28/11 Page 6 of 12

fund a chapter 11, 12 or 13 plan which would pay a substantial portion of unsecured claims;

2) whether a debtor's petition was filed as a consequence of illness, disability, unemployment, or some calamity;

3) whether the schedules suggest the debtor obtained cash advances and consumer goods on credit exceeding his or her ability to repay them;

4) whether a debtor's proposed family budget was excessive or extravagant;

5) whether a debtor's statement of income and expenses misrepresented the debtor's true financial condition; and

6) whether the debtor engaged in eve-of-bankruptcy purchases.

353 F.3d at 1139-40.

25. The primary ground for dismissal under the totality of circumstances of the debtor's financial situation standard is the debtor's ability to repay unsecured debt. In re Livernoche, 2007 WL 3406859 (Bankr. D. Haw. November 15, 2007). A debtor's ability to repay creditors over time, standing alone, remains a sufficient ground to support a finding of abuse under §707(b)(3)(B). In re Lamug, 403 B.R. at 55; In re Stewart, 410 B.R. 912, 922-24 (Bankr. D. Or. 2009). See also In re Reed, 422 B.R. 214, 233 (Bankr. C.D. Cal. 2009) (debtor's ability to pay constitutes abuse under totality of circumstances test of §707(b)(3) even if debtor passes means test of §707(b)(2)).

26. When applying the Price factors to this case and in particular reviewing

U.S. Bankruptcy Court - Hawaii #10-02001 Dkt # 65 Filed 11/28/11 Page 7 of 12

the Debtors' ability to repay creditors over time, the Court concludes that abuse is present which warrants dismissal pursuant to 11 U.S.C. §707(b)(3)(B).

27. The Court concludes that the Debtors' actual monthly income measured against reasonable expenses leaves sufficient excess funds with which the Debtors could repay unsecured creditors a substantial amount over time.

28. The Debtors' monthly gross income is either $12,738.48 per month (as measured using the September 18, 2011 pay advice) or $12,231.86 per month (as measured using the November 13, 2011 pay advice). The October 3, 2011 Amended Schedule I which stated that the Debtors' monthly gross income totaled $10,195.85 per month understates the Debtors' gross income. For purposes of this motion, the Court will conduct its analysis using the November 13, 2011 pay advice in which gross monthly income (from wages and pension) totals $12,231.86.

29. Assuming the Court allowed the Debtors the full benefit of all claimed payroll deductions, including pension contributions and 401k loan repayments, in Amended Schedule I (totaling $3,795.53) and all monthly expenses claimed in Amended Schedule J (totaling $6,235.00), the Debtors would have $2,201.33 in net monthly income with which they could repay unsecured creditors.

30. The United States Trustee, however, has opposed the allowance of certain expenses, including, inter alia, pension loan repayments and 401k

U.S. Bankruptcy Court - Hawaii   #10-02001   Dkt # 65   Filed 11/28/11   Page 8 of 12

retirement payments. The majority of courts have held that the borrowing from a retirement account does not give rise to a secured or unsecured claim or debt under the Bankruptcy Code. "Loan repayments to retirement accounts are considered 'disposable income' because of their unique character; the debtor is, in essence, repaying a loan to himself. Thus it would be unfair to creditors to allow the debtors in the present case to commit part of their earnings to the payment of their own retirement fund..." In re Speith, 427 B.R. 621, 625 (Bankr. N.D. Ohio 2009) citing In re Gonzales, 378 B.R. 168 (Bankr. N.D. Ohio 2007). See also In re Thompson, 370 B. R. 762 (Bankr. N.D. Ohio 2007); In re Zeigler, 2009 WL 5943248 (Bankr. D. Colo. Nov. 16, 2009); In re Esquivel, 239 B.R. 146 (Bankr. E.D. Mich. 1999); In re Otero, 371 B.R. 190 (Bankr. W.D. Tex 2007); In re Villarie, 648 F.2d 810 (2d Cir. 1981); In re Muller, 696 F.2d 470 (6th Cir. 1983); and In re Cohen, 246 B.R. 658 (Bankr. D. Colo. 2000). Therefore, the Court concludes that Debtors' loan repayment to the GE retirement account totaling $289.68 is disallowed as a Schedule I payroll expense for purposes of analyzing the Debtors' ability to repay creditors.

31. For retirement contributions, the Ninth Circuit Court of Appeals has held that bankruptcy courts have discretion to determine whether such contributions are a reasonably necessary expense for a particular debtor based on the facts of each individual case. Hebbring v. U.S. Trustee, 463 F.3d 902 (9th Cir.

-9-

U.S. Bankruptcy Court - Hawaii #10-02001 Dkt # 65 Filed 11/28/11 Page 9 of 12

2006). Regarding voluntary pension plan contributions, the Court must allow all debtors to seek bankruptcy protection while contributing to a retirement plan if it appears reasonably necessary for the support of the debtor or debtor's dependents. In re Craig, 579 F3d. 1040 (9th Cir. 2009).

32. In the present case, the Debtors make the unusual claim for retirement contributions into a *second* pension, as Mr. Ng already currently receives retirement income from an existing military pension. Mr. Ng has indicated that he does not plan to retire until 2032, a period in excess of 20 years. Denying a debtor's contributions for a period of 3 - 5 years has less of an impact when the retirement will not occur for two decades. The Debtor could restart his contributions after completing payments to unsecured creditors and still set aside substantial amounts to fund a second pension fund. While the Debtor has expressed concern over potential medical bills in the future, the United States Trustee correctly points out that the Ngs' existing medical insurance coverage is extensive thus resulting in out-of-pocket medical expenses of $100 as shown in Amended Schedule J. The Ngs' concerns for the future, while understandable, are speculative. Under the totality of circumstances, the Court concludes that Debtors' voluntary retirement contribution to a second pension plan in the amount of $264.16 is not reasonably necessary for the support of Debtors for purposes of analyzing the Debtors' ability to repay creditors.

U.S. Bankruptcy Court - Hawaii    #10-02001    Dkt # 65    Filed  11/28/11    Page 10 of 12

33. Next, the U.S. Trustee has challenged the Debtors' expense claim on Amended Schedule J of $400 per month to pay pre-petition taxes. The Court in its February 9, 2011 memorandum decision deferred its ruling on the pre-petition tax expense. Looking at the totality of circumstances at this juncture, as this is a pre-petition debt and one which that would be paid in full using the Debtors' excess income in a hypothetical Chapter 13 plan, the Court concludes that this expense should be disallowed for purposes of analyzing the Debtors' ability to repay creditors.

34. Therefore, with the Debtors' gross monthly income as $12,231.86 as stated in paragraph 28 and disallowing pension contributions ($264.16), 401k loan repayments ($289.68), and pre-petition tax payments ($400) as explained in paragraphs 30-33, Debtors' monthly net income is determined to be $3,155.17.

35. The Court concludes that the Debtors have the ability to repay unsecured creditors over time.

36. In considering the factors enumerated by the Ninth Circuit Court of Appeals in In re Price, the Court also notes that this bankruptcy filing does not appear to have been caused by illness, disability, unemployment, or some other calamity. Further, it appears that the Debtors' Amended Schedule I and J filed October 3, 2011 understated the Debtors' true gross wages received in 2011. Under Price, these factors also weigh in favor of dismissal.

-11-

37. Accordingly, the Court having given due consideration to the factors enumerated by the Ninth Circuit Court of Appeals in <u>In re Price</u>, concludes that the Debtors' case constitutes an abuse under the totality of circumstances. This case will be dismissed pursuant to Section 707(b)(3)(B) of the Bankruptcy Code. A separate order will issue.

Dated: Honolulu, Hawaii Nov 28, 2011

Lloyd King
United States Bankruptcy Judge